# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 18, 2011

## CHUDNEY VALARYCK GOFF v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Maury County**
**No. 18654     Jim T. Hamilton, Judge**

---

**No. M2010-01713-CCA-R3-PC - Filed January 13, 2012**

---

The Petitioner, Chudney Valaryck Goff, appeals the Maury County Circuit Court's denial of post-conviction relief from his two convictions for sale of one-half gram or more of cocaine in a drug-free school zone, a Class B felony, and his effective eight-year sentence. On appeal, the Petitioner contends that (1) the trial court failed to make findings of fact and conclusions of law required by Tennessee Code Annotated section 40-30-111(b) and (2) counsel provided ineffective assistance by failing (a) to provide the Petitioner with the State's discovery materials before the Petitioner entered his guilty pleas, (b) to provide the Petitioner with a defense, and (c) to communicate adequately and effectively with the Petitioner. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

Michael D. Cox (on appeal) and John Russell Parkes (at the plea hearing), Columbia, Tennessee, for the appellant, Chudney Valaryck Goff.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; T. Michel Bottoms, District Attorney General; and Brent A. Cooper, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner pled guilty to two counts of sale of cocaine in a drug-free school zone and was sentenced to concurrent eight-year terms. At the post-conviction hearing, the

Petitioner testified that he did not receive the State's discovery materials before he filed his post-conviction petition. He said that after he received the State's discovery materials from post-conviction counsel, he saw a discrepancy between the Columbia Police Department's preliminary investigative report and the Tennessee Bureau of Investigation's (TBI) official forensic chemistry report. The police report showed one-half gram of cocaine was recovered in the Petitioner's case but the TBI report showed one and one-tenth grams of cocaine were recovered. The discrepancy in the cocaine's weight related to count two of the indictment. The reports were received as exhibits.

The Petitioner testified that the discrepancy in the cocaine's weight was not pointed out by counsel and that he would have told counsel about the discrepancy had he known of it. He said he would not have pled guilty had he known of the discrepancy because it showed that someone tampered with the evidence. He said the only reason he pled guilty was because counsel told him that there was a 90% to 95% probability of a conviction.

The Petitioner testified that he heard the State's claim during opening statements that the original plea offer given to counsel was twelve years' confinement. He said he was never told about the twelve-year offer. He agreed counsel negotiated a better plea offer because the Petitioner received and accepted an eight-year plea offer.

The Petitioner testified that counsel never went to the scene of the crime to investigate. He said counsel told him that counsel would have given the Petitioner a longer sentence if counsel were the district attorney. He said that he could not "stand the thought" of a trial with counsel representing him and that he felt he had already lost his case because counsel provided him with no hope. He said counsel told him that he was within three hundred feet of a school zone and that he was guilty. He said he met with counsel twice about the eight-year plea offer.

The Petitioner testified that Corey Walker was convicted of possession with intent to sell cocaine. Mr. Walker's judgment of conviction was received as an exhibit. Upon questioning by the trial court as to the judgment's relevance, the Petitioner said, "It just show[ed] the .5, what I got charged with, .5, and then they sent it to the lab, it jumped up a Class. It went from a Class C to a Class B."

On cross-examination, the Petitioner testified that Mr. Walker's judgment was important because it showed that sale of one-half gram of cocaine was a Class C felony rather than a Class B felony. He did not know the State only had to prove that the cocaine weighed one-half gram or more to establish a Class B felony. He understood that the weight listed on the police report was only an estimate and that the TBI "officially weighed and tested" the cocaine.

The Petitioner testified that he did not know whether $100 bought one-half gram of cocaine or bought one and one-tenth grams of cocaine. He agreed he watched a video recording that showed his "passing toilet paper" but disagreed the recording showed him selling cocaine. He agreed that the day he watched the recording was the same day he was charged with coercion of a witness, but he claimed that the charge was dismissed. He agreed counsel represented him when the coercion of a witness charge was dismissed.

The Petitioner testified that counsel met with him at the jail twice. He said that he was released on bond for a portion of the time the charges were pending but that his bond was revoked when he was charged with coercion of a witness. He said that counsel visited him at the jail twice after his bond was revoked and that he met with counsel once before his bond was revoked. He said that he did not receive letters from counsel while he was released on bond but that he might have received an invoice. He said he received "numerous" letters from counsel while he was in custody in response to his letters.

Upon questioning from the trial court, the Petitioner testified that counsel was ineffective even though counsel negotiated an eight-year plea offer after the State originally offered twelve years' confinement and was able to convince the State to dismiss the coercion of a witness charge.

Counsel testified that he was licensed to practice law in May 1987. He said that approximately 75% to 80% of his work was criminal defense when he began practicing law but that his practice at the time of the hearing was 50% criminal defense. He said he had tried over 120 jury trials, over one-half of which were criminal jury trials. He said he could only think of one attorney in Maury County who had handled as many Class A or B felony drug cases as he had.

Counsel testified that he was familiar with the Petitioner's case and that initially the State thought the Petitioner's charges were Class A felonies because they occurred in a drug-free school zone. He said he was able to convince the State that the facts supported offenses that were only Class B felonies with 100% service. He agreed he and the prosecutor sat down and discussed the meaning of the drug-free school zone statute during his representation of the Petitioner. He said he shared the belief that felonious possession of one-half gram of cocaine was a Class B felony. He was unaware of any law showing that one-half gram of cocaine, either a sale or possession with the intent to sell, was a Class C felony.

Counsel testified that the Columbia Police Department report and the TBI laboratory report were in his case file and that they were both provided in the State's discovery materials. He said his file contained a confirmation letter stating that he provided the discovery materials to the Petitioner. He said he reviewed the discovery materials with the

Petitioner. He said that police reports were not admissible as evidence in a trial but that he used them for purposes of cross-examination. He disagreed with the Petitioner that the discrepancy in the cocaine's weight would have had an impact on the Petitioner's case at a trial. He said, however, he would have used the discrepancy on cross-examination. He said that even if he were successful in convincing a jury that one of the two charges was a Class C felony, rather than a Class B felony, the Petitioner was a Range II offender. He disagreed with the Petitioner's claim that the discrepancy in the cocaine's weight established that tampering occurred. He said it was not unusual for a TBI laboratory drug weight to vary slightly from an officer's field test. He said that he never believed probation was a possible sentencing outcome and that he wrote the Petitioner a letter stating his opinion.

Counsel testified that he could not recall the exact number of times he met with the Petitioner but recalled two meetings at the jail, once before the bond revocation hearing, and once to review the State's discovery materials and watch the video recording. He said that after he met with the Petitioner to review the discovery materials and watch the recording, the Petitioner left the courthouse and threatened the State's confidential informant. He said the State moved to revoke the Petitioner's bond. He said that he gave the Petitioner his opinion that the State had a weak case on the coercion of a witness charge. He said he met with the Petitioner to discuss a misdemeanor drug possession charge that was pending at the same time as the other charges.

Counsel testified that he wrote the Petitioner a letter on April 9, 2009, to confirm that the Petitioner was sent a copy of the State's discovery materials and that he enclosed a copy of the indictment with the letter. The letter stated that counsel watched the recording of one of the two drug sales, that the recording was clear, that it appeared to be the Petitioner in the recording, and that the Petitioner made a sale of "some substance." The letter said the police officers were prepared to testify at a trial. The letter included a copy of Tennessee Code Annotated section 39-17-432 and stated the required minimum sentence of confinement. The letter discussed the Petitioner's Range II offender status, the Petitioner's prior felony convictions, and told the Petitioner the charged offenses were Class B felonies. The letter was received as an exhibit. He wrote the Petitioner between six to ten letters during his representation of the Petitioner.

Counsel testified that the State withdrew the eight-year plea offer after the Petitioner's bond was revoked. He said he advised the Petitioner by a letter that the offer had been revoked but that counsel would attempt to renegotiate two concurrent eight-year sentences. He said that he would have been prepared for a trial had the Petitioner decided not to plead guilty. He said, however, that he believed there was an "extremely high likelihood of conviction" and that the Petitioner faced potential consecutive sentencing as a Range II offender on two Class B felonies. He said that he only gave the Petitioner his opinion about

the possible outcomes of the Petitioner's case and that he did not force the Petitioner to plead guilty.

Counsel testified that he met with the Petitioner the night before the guilty plea hearing. He said the Petitioner did not like pleading guilty, but he believed the Petitioner understood what was happening at the guilty plea hearing. He said he thought the Petitioner understood that he was not required to plead guilty and that he could reject the plea offer and proceed to a trial. He said he wrote the Petitioner a letter on August 5, 2009, telling the Petitioner that proceeding to a trial was against his recommendation because counsel thought there was a 90% to 95% probability of a conviction. The letter stated that as a Range II offender, the Petitioner faced a twelve-year sentence on each count. The letter was received as an exhibit.

On cross-examination, counsel testified that one of the police recordings showed the Petitioner wearing a white t-shirt, with braided hair, and smoking a tobacco or marijuana cigarette. He recalled the recording showed the Petitioner making a hand-to-hand exchange. He said the recording showed the Petitioner's receiving something in his extended hand. He did not recall the contents of the second video recording. He said, however, that he wrote the Petitioner a letter confirming that he and the Petitioner watched one of the recordings together and that the second recording was of poor quality or did not record.

Counsel testified that although the recording of the second sale did not show the Petitioner engaged in selling cocaine, the State could have proven there was a second sale without a recording. He said the officers were prepared to testify that they gave the confidential informant "buy money," that they patted down the informant before and after the informant met with the Petitioner, and that the informant possessed cocaine after meeting with the Petitioner but no longer possessed the money. He said that after he reviewed both recordings, it was his recommendation that an eight-year sentence with 100% service was a good result based on the State's evidence.

On redirect examination, counsel testified that the mandatory minimum fine in similar drug cases was approximately $2000 and that the judgments in the Petitioner's cases showed no fine. He could not recall the reason the fines and court costs were not imposed but said he probably argued that the fines and court costs should not be imposed because the Petitioner was going to serve the entire eight years in confinement. He said court costs were approximately $600 to $900 in Maury County. He agreed that he successfully negotiated a sentence that was four years less than the statutory minimum for the indicted offenses and saved the Petitioner approximately $5000 to $6000 that could have been owed in fines and court costs.

In denying the petition for post-conviction relief, the trial court said,

It's very plain to the Court . . . that had it not been for [counsel's] good work, [the Petitioner] would be staring down the barrel of at least a 12-year sentence and five to six thousand dollars in fines and costs. . . . Because of what [counsel] did, instead of getting a twelve-year sentence, [the Petitioner] got an eight-year sentence.

The trial court asked the Petitioner if he agreed with the court's findings and the Petitioner replied, "Yes, sir." The trial court found that counsel successfully negotiated the dismissal of the coercion of a witness charge. The trial court asked the Petitioner if he agreed and the Petitioner replied, "Yes, sir." The trial court found that the State agreed not to charge the Petitioner fines and court costs because of counsel's representation. The trial court asked the Petitioner if he agreed and the Petitioner replied, "Yes, sir." The Petitioner agreed with the trial court that the State initially offered the Petitioner twelve years' confinement but that counsel was successful in negotiating eight years' confinement. The trial court's written order stated that the petition was denied "for the reasons stated on the record." This appeal followed.

# I

The Petitioner contends that the trial court failed to make findings of fact and conclusions of law required by Tennessee Code Annotated section 40-30-111(b) (2006) (amended 2009). The State counters that the trial court's failure was harmless error because the court made oral findings of fact and conclusions of law at the post-conviction hearing. We agree with the State.

The Post-Conviction Procedures Act requires that the trial court "enter a final order . . . [setting] forth in the order or a written memorandum of the case all grounds presented, and . . . [stating] the findings of fact and conclusions of law with regard to each ground." T.C.A. § 40-30-111(b). Although the trial court's order of dismissal in the present case falls short of the statutory requirements, the court made oral findings that are preserved in the transcript of the post-conviction hearing. We conclude that the trial court's failure to make written findings was harmless error. See T.R.A.P. 36(b); see also Travis R. Morris v. State, No. E2009-00497-CCA-R3-PC, Rhea County (Tenn. Crim. App. Oct. 29, 2010), perm. app. denied (Tenn. Feb. 17, 2011).

# II

The Petitioner also contends that he received the ineffective assistance of counsel during the conviction proceedings. The Petitioner argues that counsel failed (a) to provide him with the State's discovery materials before the Petitioner entered his guilty pleas, (b) to provide him with a defense, and (c) to communicate adequately and effectively with him. The Petitioner contends that he would not have pled guilty had counsel been effective in his representation. The State contends that the Petitioner failed to prove his claim by clear and convincing evidence. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2010). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2010).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." Id. When a petitioner pleads guilty, he must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Adkins v. State, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

The record shows that the trial court accredited counsel's testimony. Counsel testified that both the Columbia Police Department report and the TBI laboratory report were provided in the State's discovery materials and that he forwarded the discovery materials to the Petitioner. A letter confirmed that the Petitioner was provided with the discovery materials. Counsel said that he met with the Petitioner twice at the jail and that he met with the Petitioner before the Petitioner's bond was revoked. At one meeting, counsel reviewed the State's discovery materials and watched a recording with the Petitioner.

Counsel testified that he met with the Petitioner the night before the plea hearing. He said that the Petitioner understood what was happening at the guilty plea hearing and that the Petitioner was told he could reject the eight-year plea offer and proceed to a trial. Counsel's letter dated August 5, 2009, confirmed that he "strongly recommended" that the Petitioner accept the eight-year plea offer. After evaluating the discovery materials, including the recording and the witness statements, counsel thought the Petitioner would most likely be convicted at a trial and told the Petitioner that he faced consecutive sentencing of twelve years' confinement on each count.

The record shows that counsel communicated with the Petitioner through six to ten written letters. Counsel said, and a letter verified, that he watched the recording of one of the drug sales, that the recording was clear, that it appeared to be the Petitioner in the recording, and that the Petitioner made a sale of "some substance." The letter told the Petitioner that the police officers were prepared to testify at a trial and discussed the felony classification of the charged offenses, the minimum required sentence if convicted, the Petitioner's Range II offender status, and the Petitioner's prior criminal history.

The trial court found that counsel's representation benefitted the Petitioner greatly, including an eight-year sentence as compared to a twelve-year sentence, a remittance of $5000 to $6000 in fines and court costs, and a dismissal of the felony coercion of a witness charge. During the trial court's findings of fact, the Petitioner agreed that counsel successfully negotiated each of these benefits. The Petitioner did not establish his claim by clear and convincing evidence and is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE